[No. H024767. Sixth Dist. Nov. 4, 2003.]

IN RE THOMAS F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
THOMAS F., Defendant and Appellant.

## Counsel

J. J. Hamlyn III, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondents.

## Opinion

**RUSHING, P. J.**—Thomas F., a minor, appeals from an order of the juvenile court in which he was found to be a ward of the court as described in Welfare and Institutions Code section 602. At the jurisdictional hearing, the juvenile court prohibited the minor from calling four witnesses to testify on his behalf on the ground that defense counsel had failed to disclose her intent to call these witnesses to the prosecution in a timely manner. We find the juvenile court erred in refusing to allow the minor to call the four witnesses and reverse the order.

The minor also petitions for a writ of habeas corpus, which we ordered considered with his appeal. He raises arguments centering on the issue of his counsel's effectiveness. We dispose of the habeas petition by separate order filed concurrently. (Cal. Rules of Court, rule 24(b)(4).)

### Statement of the Case and Facts

The instant case is a juvenile delinquency action that arose from allegations that the minor, age 16 at the time, engaged in acts of molestation on two pre-teen girls. At the conclusion of the jurisdictional hearing, the juvenile court found true the allegations of molestation as to one of the girls (Victim 1), while making a "not true" finding as to the allegations related to the second girl, Victim 1's younger sister (Victim 2).[1]

Victim 1, born in 1989, described the first incident of sexual abuse by the minor as follows: the minor, a friend of Victim 1's mother and a fellow resident of the trailer park where Victim 1, her mother and three sisters lived, came over to Victim 1's trailer. At the time, Victim 1's three sisters were home, but were playing outside, and Victim 1's mother was not home. The minor told Victim 1 to go to her room. Without any verbal or physical

---

[1] Because the juvenile court found the allegations in count 1 true as to Victim 1, only the facts related to her molestation are included in this opinion.

coercion, Victim 1 walked down the hallway, passed by her own bedroom, and went into the bedroom shared by two of her sisters. This bedroom had no door. As she walked to the bedroom, the minor followed her. Before the two got onto the bed, the minor told Victim 1 to take off her pants and underwear, while he removed his own pants and underwear. The minor then got on top of Victim 1 and penetrated her vagina with his penis. The minor moved inside her for two to three minutes. When the minor finished, he got off of Victim 1, dressed, and left the trailer. While Victim 1 was getting dressed, she noticed "[m]ilky white," "creamy stuff" outside her vagina. Victim 1 stated this incident occurred after school, while she was alone in the trailer. When her mother and sisters came home 10 minutes later, Victim 1 did not tell them what had happened with the minor.

Victim 1 stated that the minor would repeat these sexual encounters two to three times a week from the first incident in March 1999, until the end of June 2000, when Victim 1 returned to live with her father in Fresno. The incidents would always begin by the minor ordering Victim 1 into the same back bedroom with no door. Occasionally, Victim 1's sister, Victim 2, would be home when the minor arrived, and she would stay in the living room while the minor and Victim 1 were in the bedroom together. The incidents always happened on weekdays between the time she got home from school and dinner, and on weekends, between lunch and dinner.

Victim 1 spoke with social worker, Susan Gleason regarding these incidents of molestation with the minor, as well as other incidents of molestation involving her mother.[2] Victim 1 told Ms. Gleason that her mother molested her two to three times a week between January 1999 and April 2000. Victim 1 stated that the minor and her mother had collectively molested her over 200 times, and that one or the other of them molested her every single day. The incidents never involved the minor and her mother molesting Victim 1 at the same time, and Victim 1 stated that she was never molested by the minor and her mother on the same day.

Regarding the sexual molestation by her mother, Victim 1 stated that it would begin in the same fashion as the molestation by the minor, in that her mother would tell her to go into the bedroom. In addition, Victim 1's mother would always molest her when they were alone in the trailer, and her three sisters were outside.

After Victim 1 returned to live with her father and stepmother in Fresno, she told them about the molestation by her mother. During an interview with

---

[2] Victim 1 told Ms. Gleason that another boy named Ryan was molesting her during this time period as well.

a Fresno police officer, Victim 1 did not tell the officer about the molestations involving the minor, nor did she tell social worker Steven Tully about the molestations when he came to the trailer to interview her about an alleged incident of physical abuse perpetrated by her mother on her younger sister.

A juvenile wardship petition pursuant to Welfare and Institutions Code section 602 was filed on December 10, 2001, alleging that the minor had committed continued sexual abuse of Victim 1 and Victim 2, children under the age of 14, between January 1999 and the summer of 2000 (Pen. Code, §§ 288, 288.5 subd. (a), 1203.066 subd. (b).)

The jurisdictional hearing took place on June 10, 11, 12 and 19, 2002. On June 11, 2002, during the minor's production of evidence, the juvenile court barred the testimony of four proposed witnesses on the ground that defense counsel had committed discovery violations by failing to provide the prosecution with information about these witnesses until the second day of the jurisdictional hearing.[3] These proposed defense witnesses were Valerie S. and Laney K., two good friends and classmates of Victim 1 and her sister. A third proposed witnesses was Valerie's mother, Roberta S. Defense counsel made an offer of proof that all three of these witnesses would testify that Valerie and Laney were often at Victim 1's house after school, challenging Victim 1's assertion that the molestations occurred numerous times a week when no one else was home. In addition to these three witnesses, the minor also intended to call social worker Bev Kovak, who would testify in support of the other social worker already called on behalf of the minor, Steve Tully.

After hearing argument from both sides regarding the testimony of the four proposed witnesses, the juvenile court ruled that the testimony was to be excluded based on defense counsel's late disclosure to the prosecution. The court found that such late disclosure was prejudicial to the prosecution, because the two molestation victims had already completed their testimony and returned home to Fresno.

On June 12, 2002, the court took the matter under submission and on June 19, 2002, the court found true the allegations of sexual molestation as to Victim 1 (count 1), and found the allegations as to her sister, Victim 2 (count 2) not true.

At the dispositional hearing on July 11, 2002, the juvenile court declared the minor a ward of the court, and placed him on probation for a period of 24 months, with 90 days to be spent in juvenile hall.

---

[3] Defense counsel stated that the late disclosure of these witnesses was as a result of her investigator's difficulty in interviewing them. In addition, counsel stated that she did not know the testimony of these witnesses would be relevant until after Victim 1 testified that she was always isolated and alone during the assaults.

The minor filed a notice of appeal on July 11, 2002.

DISCUSSION

The minor asserts on appeal that he was denied his rights to due process and effective assistance of counsel under the United States Constitution, because the juvenile court excluded his witnesses as a sanction for a discovery violation, without a clear reciprocal discovery order in place. Specifically, because the reciprocal discovery provisions stated in Penal Code section 1054, et seq.[4] expressly apply to criminal proceedings, and a Welfare and Institutions Code section 602 proceeding is not criminal, they do not automatically apply to this case. Without express statements of the juvenile court ordering reciprocal discovery consistent with Penal Code section 1054, et seq., it was unfair to impose sanctions for a reciprocal discovery violation.

■ The law is clear, and both parties concede that the juvenile court has discretion to order reciprocal discovery consistent with Penal Code section 1054, et seq. in a delinquency case. (*Robert S. v. Superior Court* (1992) 9 Cal.App.4th 1417, 1420–1422 [12 Cal.Rptr.2d 489]; accord *Joe Z. v. Superior Court* (1970) 3 Cal.3d 797, 801–802 [91 Cal.Rptr. 594, 478 P.2d 26].) However, the juvenile court must *exercise* its discretion to order reciprocal discovery by making a discovery order. In the absence of an express order for reciprocal discovery by the juvenile court, the provisions of Penal Code 1054 do not automatically apply to a delinquency proceeding. (*Robert S. v. Superior Court, supra,* 9 Cal.App.4th at pp. 1420–1422.)

In the instant case, the record contains no order by the juvenile court that the parties were required to provide reciprocal discovery consistent with Penal Code section 1054 et seq. Moreover, we have searched the record and find no standing order for reciprocal discovery in juvenile cases. The juvenile court's statement to the parties prior to the commencement of trial to "get [your] witnesses subpoenaed, get everything lined up and ready to go," did not amount to an order for reciprocal discovery. Moreover, the fact that the parties may have been working under an assumption that they were subject to reciprocal discovery obligations is immaterial to a determination of whether

---

[4] Penal Code section 1054.3 provides, in relevant part:

"The defendant and his or her attorney shall disclose to the prosecuting attorney:

"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses . . . ."

Penal Code section 1054.5, subdivisions (b) and (c) provide, in relevant part:

"(b) . . . Upon a showing that a party has not complied with Section . . . 1054.3 . . . , a court may make any order necessary to enforce the provisions of this chapter, . . .

"(c) The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted."

such rules actually applied to this delinquency case.[5] The law is clear that Penal Code section 1054, et seq. does not automatically apply to a juvenile case in the absence of the juvenile court's express order. (*Robert S. v. Superior Court, supra,* 9 Cal.App.4th at pp. 1420–1422.)

The People's reliance on California Rules of Court, rule 1420[6] governing discovery in juvenile cases as providing authority for the witness preclusion sanction in this case is misplaced. Specifically, California Rules of Court rule 1420 relates to the prosecutor's duty to disclose information to the minor in a pending juvenile action. (Cal. Rules of Court, rule 1420(b), (c) & (d).) In addition, the portion of the rule that provides for discovery sanctions relates to the parties' failure to comply with provisions of the rule itself, or a discovery order issued by the court. (Cal. Rules of Court, rule 1420(j).)[7] In this case, the juvenile court made no discovery order and therefore, the sanction provisions of rule 1420(j) do not apply.

Because there was no express order for reciprocal discovery in this case, the juvenile court's issuance of a witness preclusion sanction was an abuse of discretion. The juvenile court's preclusion of defense witnesses deprived the minor of his federal constitutional rights to due process and effective assistance of counsel, and as such, we review the error under the harmless-beyond-a-reasonable-doubt standard set for the in *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].

[5] During the arguments on whether the four proposed witnesses should be permitted to testify, defense counsel stated, "I understand what [the prosecutor] is trying to say. The intent to call triggers the duty to disclose." In addition, defense counsel remained silent when the prosecutor stated, "[W]hen the legislature enacted . . . reciprocal discovery laws . . . the whole purpose . . . was to prevent this sort of dropped-on evidence."

[6] California Rules of Court, rule 1420 provides, in relevant part:

"(b) [Duty to disclose police reports] Upon filing the petition, petitioner shall promptly deliver to or make accessible for inspection and copying by the child . . . , or their counsel, copies of the police, arrest, and crime reports relating to the pending matter. . . .

"(c) [Affirmative duty to disclose] Petitioner shall disclose any evidence or information within petitioner's possession or control favorable to the child, parent, or guardian.

"(d) [Material and information to be disclosed on request] Except as provided in subdivisions (g) and (h), petitioner shall, upon timely request, disclose to the child and parent or guardian, or their counsel, the following material and information within the petitioner's possession or control:

"[¶] . . . [¶]

"(4) Names and addresses of witnesses interviewed by an investigating authority in connection with the pending matter. . . . "

[7] California Rules of Court, rule 1420(j) provides:

"(j) [Failure to comply; sanctions] If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with this rule or with an order issued under this rule, the court may . . . , prohibit a party from introducing in evidence the material not disclosed. . . ."

The error of excluding the proposed defense witnesses in this case was not harmless beyond a reasonable doubt. The prosecution's case was based on Victim 1's credibility, as there were no witnesses to the molestations or admissions of culpability. Indeed, in its ruling, the juvenile court stated, "It's a very troubling case. . . . [¶] It is a case of credibility." The fact that Victim 1 stated that all of the minor's acts of molestation occurred while she was alone in the trailer, save for the few times Victim 2 was home in the living room, during the afternoon hours after school and before dinner, is directly contradicted by the proposed testimony of three of the four witnesses. Moreover, Victim 1 testified on cross-examination that she knew all three witnesses, that she attended school with two of them, and that one of them was her best friend. It is certainly conceivable under the circumstances that the witnesses' testimony that they were with Victim 1 on many occasions at Victim 1's trailer after school during the time period in question, and that they never witnessed any molestation would impact the trier of fact in weighing Victim 1's credibility. Moreover, the court's finding of "not true" as to the younger sister suggests that credibility may have been critical in the court's adjudication. Under these circumstances, we conclude that the integrity of the fact-finding process was harmed by the exclusion of the proposed defense witnesses.

■ The juvenile court erred in refusing to permit the minor to call his four proposed witnesses. Moreover, this was not harmless error under *Chapman v California* (1967) 386 U.S. 18. Therefore, we reverse the order of the juvenile court.

## DISPOSITION

The orders appealed from are reversed.

Wunderlich, J., and Mihara, J., concurred.